**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WILLIAM E. GRAHAM,**

**CASE NO. 2:20-CV-4847**

**Petitioner,**　　　　　　**CHIEF JUDGE ALGENON L. MARBLEY
Magistrate Judge Elizabeth P. Deavers**

**v.**

**WARDEN, PICKAWAY CORRECTIONAL
INSTITUTION,**

**Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition and Memorandum in Support, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

Petitioner's Motion to Compel the Respondent to submit the exhibits attached to the Petitioner's motion (ECF No. 5) is **DENIED**.

## I.　　BACKGROUND

Petitioner challenges his convictions pursuant to his no contest plea in the Franklin County Court of Common Pleas to 18 counts of breaking and entering, one count of attempted breaking and entering, and two counts of tampering with evidence. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

{¶ 2} Mr. Graham was arrested on January 19, 2017 in connection with events alleged to have occurred at two commercial establishments on that very date.

In an indictment filed on January 27, 2017, the state charged Mr. Graham in Franklin C.P. case No. 17CR-528 with two counts of breaking and entering and one

count of possessing criminal tools. He remained incarcerated pending resolution of the charges.

{¶ 3} On November 14, 2017, the state issued a second indictment. Franklin C.P. case No. 17CR-6193 realleged the three crimes charged in the earlier case and added one additional criminal tools count from those events, but added another 40 counts relating to other episodes said to have occurred at various different places at earlier dates ranging from September 29, 2016 to January 14, 2017. Mr. Graham, already incarcerated on the first case, was subject to a warrant served in that second case on December 18, 2017. (Dec. 19, 2017 Entry of Warrant Served.) Having been overtaken by the second indictment, the initial case, 17CR-528, was nolled on January 23, 2018.

{¶ 4} On July 23, 2018, Mr. Graham pleaded no contest to and was found guilty of 21 of the counts in the newer case. Those counts included the two breaking and entering charges duplicated from the earlier case (now designated as counts 41 and 43). A "criminal tools" charge from that earlier case (now count 42) and an additional such count (now count 44), along with 21 of the other counts, were dismissed for non-prosecution as part of the plea deal. (July 23, 2018 Entry of No Contest Plea; July 25, 2018 Jgmt. Entry.)

{¶ 5} The Common Pleas Court adopted the sentence recommended by the prosecution and the defendant.

It sentenced Mr. Graham to a total of five years in prison: 12 months on each of the 18 breaking and entering counts, run concurrently to each other but consecutively to concurrent 24-month sentences on the two tampering counts. The court credited Mr. Graham with the 550 days that he already had spent in jail in connection with the two cases. (July 25, 2018 Jgmt. Entry.)

Procedural history—time awaiting resolution

17CR-528

{¶ 6} The record reflects that after his January 19, 2017 arrest, Mr. Graham through counsel filed a demand for discovery on February 15, 2017. The state fulfilled that discovery request 22 days later, on March 6, 2017.

{¶ 7} Various continuance entries followed. The parties requested a continuance, as signed by both lawyers and the defendant, through an entry filed on March 22 referencing a need for further negotiation and discovery and extending to a new trial date (reset from March 20) of May 17, 2017. On May 18, 2017, the court filed another continuance entry, this one on the motion of the "Parties" and signed by both counsel but "refused" by defendant Mr. Graham; this entry continued the case for trial on July 6, 2017, and noted "additional negotiation," that the state was

awaiting "additional information" from detectives, and that negotiations also were ongoing with officials in Delaware County regarding a "course of conduct."

{¶ 8} A July 6, 2017 entry, again on motion of the "Parties" and signed by both counsel, but with defendant Graham "unavailable," continued the matter for trial on August 30, 2017 while noting as cause that the defendant had not been transported to the court for the scheduled trial. On September 11, 2017, the court filed an entry on motion of the "Parties" resetting the trial date from August 30 to November 1, 2017 and noting as cause that the "State recently received information on several additional incidents involving defendant," and that time was needed to review that information and to "make charging decision"; both counsel signed this entry, which defendant "refused."

{¶ 9} On November 1, 2017, the court continued the matter for trial on February 5, 2018, noting on a "criminal case processing sheet" that the judge had discussed defendant's request for new counsel, and also referencing a prison sentence from Licking County and reciting that a status conference had been set for January 17, 2018 in advance of the February trial date. Lagging that entry was an entry filed November 6, 2017, signed by both counsel but "refused" by defendant, reflecting that the "Parties" had moved to continue the trial date from November 1, 2017 to February 5, 2018 due to "additional discovery, [and] indictment forthcoming."

{¶ 10} During this period between Mr. Graham's January 19, 2017 arrest and the termination of case 17CR-528 in the aftermath of his re-indictment under case 17CR-6193, Mr. Graham, although represented by counsel, submitted certain materials on his own accord. His June 23, 2017 pro se "Motion to Dismiss Indictment" complained of unlawful arrest and questioning, and noted that he and his lawyer did not "see eye to eye" on those issues. (June 23, 2017 Mot. to Dismiss at 2.) Then in a letter to the court filed October 11, 2017, Mr. Graham expressed a number of concerns relating to his address and bail, the circumstances surrounding his arrest and evidence against him, perceived deficient performance by his lawyer, and claimed violation of speedy trial rights in combination with what he viewed as undue delay in prosecuting the "unfiled charges" in what would become the new case. (Oct. 11, 2017 Letter at 2.)

17CR-6193

{¶ 11} After the new indictment with its 41 additional charges was filed on November 14, 2017, Mr. Graham through his then-lawyer filed his demand for discovery in case 17CR-6193 on January 4, 2018. The state responded to that demand the next week, on January 11, 2018.

{¶ 12} On February 5, 2018, the date that had been set for trial in the first case that then was nolled in January 2018, the Common Pleas Court approved substitution of private counsel for Mr. Graham's previously appointed counsel. (Feb. 5, 2018 Substitution of Counsel Entry.) A related entry filed February 6, 2018 continued

the matter on the motion of "Defendant" until a trial date of February 13, 2018 to allow for appointment of the new counsel and provide "time to prepare for trial [and] review all discovery."

{¶ 13} Other continuances followed at the mutual request of the "Parties" and signed by Mr. Graham as well as by both counsel. One such continuance filed February 16, 2018 rescheduled trial for March 28, 2018 to permit more discovery (with the defense making a further discovery request on February 26th, to which the state responded on March 5th and 6th). By entry filed March 30, 2018, the trial date then was moved to April 26 to allow for further "defense investigation." And by entry of May 7, the matter then was reset on the same basis to July 23, 2018, the date on which Mr. Graham wound up making his no contest plea.

{¶ 14} Again during this period, Mr. Graham made certain filings himself even while represented by counsel. He submitted a "Motion to Dismiss Indictment" on speedy trial grounds, dated May 22 and filed May 30, 2018. He supplemented that with a hearing request dated June 27 and filed July 2, 2018. The trial court referenced those filings at a July 11, 2018 status conference, saying that Mr. Graham's motions on his own behalf would not be given effect because he was represented by counsel, and that "even if we disregard the hybrid representation issue," the court was denying the motion to dismiss. (July 11, 2018 Tr. at 6-7.)

{¶ 15} Mr. Graham's lawyer adopted and orally renewed the speedy trial motion on the day Mr. Graham entered his no contest plea, July 23, 2018. (July 23, 2018 Tr. at 5.) The trial judge said that he would deny the motion because the state had "add[ed] a supplemental superseding indictment in a timely fashion consistent with Mr. Graham's speedy trial rights." *Id.* at 6. The court then proceeded to accept the plea, find Mr. Graham guilty as specified, and impose the prison sentence. (July 23, 2018 Entry of No Contest Plea; July 25, 2018 Jgmt. Entry.)

Speedy trial issues

{¶ 16} Making both statutory and constitutional speedy trial arguments, Mr. Graham's one assignment of error maintains:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO DISMISS THE INDICTMENT.

*State v. Graham*, 10th Dist. No. 18AP-636, 2019 WL 2237030, at *1-3 (Ohio Ct. App. May 23, 2019). On May 23, 2019, the appellate court affirmed Petitioner's convictions on counts One, Three, Five, Six, Eight, Ten, Twelve, Fifteen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Eight, Twenty-Nine, Thirty-One, Thirty-Three, Thirty-Six, and Thirty-Nine;

4

but reversed his convictions on counts Forty-One and Forty-Three because prosecution on counts 41 through 44 was barred by operation of Ohio's speedy trial statutes, and remanded the case to the trial court for re-sentencing.  *Id*. at 12.  On October 16, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State v. Graham*, 157 Ohio St. 3d 1447 (Ohio 2019).  On January 9, 2020, the trial court re-sentenced Petitioner to an aggregate term of five years' incarceration.  (ECF No. 8, PAGEID # 576.)  Petitioner did not file an appeal.

On September 16, 2020, Petitioner filed this *pro se* habeas corpus petition.  He asserts that his convictions violate his right to a speedy trial (claims one and two); that the appellate court denied him due process when it took judicial notice of continuances to reject his claim (claim three); that he was denied the effective assistance of appellate counsel (claims four and five); and that he unconstitutionally was denied access to the court by application of *State v. Martin* (2004), 103 Ohio St.3d 385 (claim six).  It is the Respondent's position that Petitioner's claims are procedurally defaulted or without merit.

## II.        PROCEDURAL DEFAULT

### a.        Standard

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4,

6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is

6

applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin,* 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

b.    **Application**

In claim three, Petitioner asserts that the appellate court improperly rejected his claims by taking judicial notice of continuances of trial proceedings.  Petitioner did not raise this claim in the Ohio Supreme Court.  (*See Memorandum in Support of Jurisdiction*, ECF No. 8, PAGEID #

529.)  He may now no longer do so, by application of Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).  The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Moreover, Ohio courts have consistently relied upon the doctrine of *res judicata* to refuse to review the merits of procedurally barred claims.  *See, e.g., State v. Cole*, 2 Ohio St.3d 112 (1982).  The Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief.  *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Turning to *Maupin's* independence prong, under the circumstances presented here, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law.  Accordingly, the undersigned finds that the first three *Maupin* factors are satisfied.  Petitioner thereby has procedurally defaulted this claim for relief.

Petitioner also asserts, in claims three and four, that he was denied the effective assistance of appellate counsel because his attorney refused to object to the appellate court's judicial notice of continuances or the State's argument that the filing of a new Indictment re-started the running of the speedy trial.  This claim properly would be raised in an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, Petitioner did not file a Rule 26(B) Motion.  He did, however, raise this claim in the Ohio Supreme Court.  (*See Memorandum in Support*, ECF No. 8, PAGEID # 529.)   Nonetheless, Petitioner did not thereby preserve his claim of ineffective assistance of appellate counsel for review in these proceedings.

> [A]lthough a defendant may raise the ineffective assistance of counsel issue in both
> a timely direct appeal and a timely application under Rule 26(B), the Ohio Supreme
> Court's denial of the discretionary appeal does not exhaust the issue because the
> court of appeals is nevertheless obliged to address the application on the merits. In
> other words, raising a claim for ineffective assistance of appellate counsel in a
> discretionary appeal to the Ohio Supreme Court, without addressing the claim
> through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement
> unless the Ohio Supreme Court addresses the issue on the merits.

*Goldberg v. Maloney*, 692 F.3d 534, 537-38 (6th Cir. 2012). Further, "[u]nexhausted

ineffective-assistance-of-appellate-counsel claims may be deemed procedurally defaulted when,

as here, a criminal defendant fails to provide cause for failing to file a Rule 26(B) motion for

reopening within the prescribed ninety-day period." *Carter v. Warden, Chillicothe Corr. Inst.*,

No. 1:19-cv-823, 2021 WL 858465, at *7 (S.D. Ohio Mar. 8, 2021) (citing *Goldberg*, 692 F.3d at

538 n.3) (6th Cir. 2012).[1] Thus, Petitioner has procedurally defaulted his claims of ineffective

assistance of appellate counsel by failing to file a timely Rule 26(B) application.

In claim six, Petitioner asserts that application of *State v. Martin*, 103 Ohio St.3d at 385

unconstitutionally denied him access to the state trial court. Petitioner failed to raise this claim

on direct appeal. He raised a similar issue in his motion for reconsideration; however, the

appellate court denied that motion, noting that Petitioner had failed to raise the claim on direct

appeal:

> Mr. Graham [] urges us to overrule the holdings of the Supreme Court of Ohio in
> *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471. We have neither cause nor
> authority to do that. Moreover, Mr. Graham did not raise in his appeal the
> connected due process and redress of injury and grievances arguments to which he
> now adverts, and our opinion on the statutory and constitutionally based speedy
> trial issues to which Mr. Graham's appeal was limited did not rest on the *Martin*
> case that he now seeks to feature (but that we do not find listed in the table of
> authorities from his Appellant's Brief). We deny Mr. Graham's application for
> reconsideration.

---

[1] *But see Hickman v. Bradshaw*, No. 5:16 CV 1077, 2017 WL 10901962, at *13 (N.D. Ohio Nov.
30, 2017), *report and recommendation adopted*, 2019 WL 1040846 (N.D. Ohio Mar. 5, 2019)
(noting that District Courts in Ohio do not agree on the issue).

(*Memorandum Decision*, ECF No. 8, PAGEID # 520.)  Again, Petitioner may now no longer present this claim to the state courts by application of *res judicata*.

"It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of res judicata.'"  *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (quoting *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006)) (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967)).  Petitioner thereby has procedurally defaulted this claim for review in these proceedings.

Petitioner may still obtain review of his claims on the merits, if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations. Petitioner bears the burden of showing cause and prejudice to overcome a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied,* 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).

Petitioner asserts the denial of the effective assistance of counsel as cause for his failure to raise claims on direct appeal.  Petitioner states that he attempted to raise all of his claims on appeal, but the appellate court refused to consider his *pro se* pleadings, in view of his representation by appellate counsel.  (*Reply*, ECF No. 12, PAGEID # 647-50.)  However, the ineffective assistance of appellate counsel cannot serve as cause where, as here, Petitioner

11

likewise has procedurally defaulted that claim. *See Gross v. Warden, Lebanon Corr. Inst.*, 426 F. App'x 349, 360 (6th Cir. 2011) ("An ineffective assistance of counsel claim may serve as the cause to excuse procedural default, but only where the claim itself has not been procedurally defaulted, or, if procedurally defaulted, cause and prejudice exist for the default.") (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). Further, attorney error in proceedings wherein there is no right to counsel – such as in the filing of a motion for a discretionary appeal with the Ohio Supreme Court – cannot serve as cause for a procedural default in those proceedings. *See McClain v. Kelly*, 631 F. App'x 422, 429 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that the right to counsel extends to the first appeal of right and no further). Moreover, "[t]he Supreme Court has held that a defendant has no constitutional right to represent himself on direct appeal." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000) (citing *Martinez v. Court of Appeal of California*, 528 U.S. 152, ——, 120 S.Ct. 684, 692 (2000)). Consequently, the appellate court's refusal to accept Petitioner's *pro se* filings cannot serve as cause for his procedural defaults. *See id*. Petitioner likewise did not preserve his claims for review by reference to his statement of facts before the Ohio Supreme Court. (*See Reply*, ECF No. 12, PAGEID # 651.) Petitioner has failed to establish cause for his procedural defaults.

Finally, the record does not indicate that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" so as to excuse Petitioner's otherwise procedurally defaulted claims. *Murray*, 477 U.S. at 496.

### III.    MERITS

#### a.    Standard of Review

The standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case.  The United States Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20  (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 571 U.S. 992 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,] or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389. 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748-49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**b.  Claims One and Two:  Speedy Trial**

Petitioner asserts that he was denied his right to a speedy trial. He argues that the State failed to meet its burden of proof on the issue and the prosecutor obtained the consent of Petitioner's appointed counsel to obtain continuances against Petitioner's wishes as a pretext for the filing of additional charges against the Petitioner. The state appellate court rejected Petitioner's claim as follows:

Speedy trial issues

{¶ 16} Making both statutory and constitutional speedy trial arguments, Mr. Graham's one assignment of error maintains:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO DISMISS THE INDICTMENT.

1) Statutory speedy trial rights under R.C. 2945.71

{¶ 17} R.C. 2945.71(C)(2) provides that someone charged with felonies "[s]hall be brought to trial within two hundred and seventy days after the person's arrest." The same restriction applies to someone charged with felonies and misdemeanors that "arose out of the same act or transaction." R.C. 2945.71(D). In computing that time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶ 18} Ohio statute further provides that the time limitation may be extended for, among other specified reasons, "[a]ny period of delay necessitated by reason of a ... motion, proceeding, or action made or instituted by the accused," or for "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(E), (H).

{¶ 19} On motion made at or before the beginning of trial, "a person charged with an offense shall be discharged if he is not brought to trial within the time required by R.C. 2945.71 and 29454.72." R.C. 2945.73(B). The Supreme Court of Ohio has "repeatedly announced that the trial courts are to strictly enforce the legislative mandates evident in these statutes." *State v. Parker*, 113 Ohio St.3d 207, 210, 863 N.E.2d 1032 (2007).

{¶ 20} The standard seems straightforward: "Upon demonstrating that more than 90 days elapsed before trial, [an incarcerated] defendant establishes a prima facie case for dismissal based on a speedy trial violation. Once a defendant establishes a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended. Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72." *State v. Vasquez*, 10th Dist. No. 13AP-366, 2014-Ohio-224, ¶ 21 (multiple citations omitted).

{¶ 21} These counting issues can become more complex, however, with the introduction of more than one indictment. *Id*. at ¶ 23 ("cases involving subsequent indictments can be problematic with respect to the issue of speedy trial rights"), citing *State v. Mohamed*, 10th Dist. No. 08AP-960, 2009-Ohio-6658, ¶ 28.

{¶ 22} Two interrelated principles inform cases involving successive indictments. First, and more generally, "[w]hen an accused waives the right to a speedy trial as

15

to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *State v. Adams*, 43 Ohio St.3d 67, 70, 538 N.E.2d 1025 (1989) (further explaining that new "defense considerations may arise" after a nolle prosequi and a new indictment; "[t]hus, a knowing and intelligent waiver cannot be made until all the facts are known by the accused," including the exact nature of the crime charged). Second, and more particularly, "the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." *State v. Baker*, 78 Ohio St.3d 108, 110, 676 N.E.2d 883 (1997).

{¶ 23} Thus, "*Baker* and *Adams* * * * combined * * * stand for the proposition that speedy-trial time is not tolled for the filing of later charges that arose from the facts of the criminal incident that led to the first charge." *Parker,* 113 Ohio St.3d at 211, 863 N.E.2d 1032. *Parker* underscores that it is the specific first-indicted "incident" to which courts look in assessing these situations, because while the subsequent indictments in *Baker* "all * * * were the result of the same investigation, * * * the charges were the direct result of different events on different days." *Id*.

{¶ 24} Construing these principles as articulated by the Supreme Court of Ohio, we have observed that " '[t]he holding in *Baker* is disjunctive and specifically sets forth two scenarios [new facts, or the state's new knowledge of facts], either of which will reset the speedy-trial timetable for charges arising from a subsequent indictment.'" *Mohamed*, 2009-Ohio-6658, ¶ 30, quoting *State v. Thomas*, 4th Dist. No. 06CA825, 2007-Ohio-5340, ¶ 17.

New, additional charges in 17CR-6193

{¶ 25} For clarity of analysis, we begin by discussing the speedy trial provisions as applied to those charges set forward for the first time in the newer indictment. As noted, only two of the counts on which Mr. Graham was convicted (B&E counts 41 and 43) and two other criminal tools counts later dismissed (counts 42 and 44) arose from the Tai's Asian Bistro and The Uniform Store episodes that formed the basis for the first indictment. All the other counts in the second indictment sprang from other, earlier break-ins to which investigators linked Mr. Graham at some time after his arrest for the activities of January 19, 2017.

{¶ 26} So, for just a few examples, the September 29, 2016 B&E at Henri's Cloud 9, the October 10, 2016 B&E at Maana's, the November 23, 2016 B&E at Under the Palm, and the January 14, 2017 B&E at Great Clips, as variously alleged in counts One, Eight, Eighteen, and Thirty-Nine of the newer indictment, all are separate and distinct from the January 19, 2017 matters in terms of dates, locations, and victims' identities. Compare November 14, 2017 indictment in case number 17CR-6193, counts 1, 8, 18, and 39 with id., counts 41 and 43.

16

{¶ 27} From November 14, 2017, when the second indictment issued, to Mr. Graham's plea on July 23, 2018, Mr. Graham's discovery requests and the continuance entries he himself signed with his new counsel tolled at least all but 89 days (or 76 days by the state's count, see Appellee's Brief at 13-14, giving certain entries retroactive application to the dates they recited, as *State v. Mincy*, 2 Ohio St.3d 6, 9, 441 N.E.2d 571 (1982) appears to suggest is appropriate). "A continuance granted upon the joint motion of the parties tolls time pursuant to R.C. 2945.72(H) because the motion is made, in part, by the defendant." *State v. Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 19 (citations omitted). Even multiplied by three because Mr. Graham was incarcerated during that time, the calculation regarding counts arising from the second indictment comes to less than 270 days.

{¶ 28} With regard to these additional counts, Mr. Graham's sole argument appears to be that "the clock did not reset" from the time of the first indictment because the superseding indictment alleged offenses that were "similar" to those for which he had been indicted the first time. Appellant's Brief at 9 (further urging that "it is reasonable to assume" that the state knew of these facts "far in advance of Mr. Graham's arrest on the second case").

{¶ 29} But under the controlling case law, it is not the state's knowledge of facts relative to the time of the second arrest that matters: what matters is whether the "additional * * * charges" in the second indictment "arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." *Baker*, 78 Ohio St.3d at 110, 676 N.E.2d 883.

{¶ 30} Here, because the "additional criminal charges arise from facts distinct from those supporting [the] original charge," *id.* at 112, 676 N.E.2d 883—that is, because facts supporting allegations of break-ins on one day at Tai's Asian Bistro and The Uniform Store are "distinct" from facts supporting charges of other break-ins at other locations on other dates—"the state should be accorded a new 270-day period beginning from the time when the second indictment was returned," *id.* at 111-12, 676 N.E.2d 883.

{¶ 31} And although we do not find this point necessary to our holding in this context, we also observe that the record reflects that both the defense counsel and the prosecution stipulated—at dates well after the time of the first indictment—that the "State [was] waiting for additional information from the investigating detectives," and that the state had "recently received information on several additional incidents involving defendant." See agreed continuance entries of May 18, 2017 and September 11, 2017; *see also, e.g., Mohamed*, 2009-Ohio-6658 at ¶ 52 (because "new fact" of lab result for drugs "was not available to the state at the time of the original arrest and/or indictment on [robbery and assault charges,] * * * * [the] speedy trial clock was triggered anew by the [second, drug-charge-specific] indictment") (emphasis added).

{¶ 32} The state is correct in urging that it was "within the speedy trial time as to the new charges." See Appellee's Brief at 14. Therefore the judgment of the trial court in finding Mr. Graham guilty in this case as to counts One, Three, Five, Six, Eight, Ten, Twelve, Fifteen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Eight, Twenty-Nine, Thirty-One, Thirty-Three, Thirty-Six, and Thirty-Nine did not contravene R.C. 2945.71.

Initial charges from 17CR-528

{¶ 33} That leaves counts 41 and 43 for assessment under the speedy trial statutes. Those counts mirrored counts of the first indictment, and the state to its credit analyzes the "[s]peedy-trial calculation as to [those] original charges" separately from the "[s]peedy trial calculation as to the new charges." See Appellee's Brief at 12, 13-14; see also id. at 9, 441 N.E.2d 571 (submitting that "the new charges in 17CR-6193 were not subject to the speedy-trial timetable in 17CR-528"), 11-12 ("The speedy-trial timetable for the original charges in 17CR-528 did not apply to the new charges in 17CR-6193").

{¶ 34} Indeed, the Supreme Court of Ohio's language from *Adams* (about when the speedy trial period should begin for the "additional charge," 43 Ohio St.3d at 68, 538 N.E.2d 1025) and *Baker* (regarding "[a]dditional crimes based on different facts," 78 Ohio St.3d at 111, 676 N.E.2d 883) inevitably has given rise to courts assessing counts within a superseding indictment separately for speedy trial purposes depending on whether they arose from the alleged facts of the first indictment or from different facts. *Compare, State v. Williams*, 10th Dist. No. 13AP-992, 2014-Ohio-2737 at ¶ 29 ("it was error for the trial court to analyze all five counts together [for speedy trial purposes] without regard to the distinct time frame applicable to each charge").

{¶ 35} *State v. Thomas*, 4th Dist. No. 06CA825, 2007-Ohio-5340, provides a clear example. In the second, "two-part indictment, the second count, weapons under disability, was a subsequent indictment that arose from the same facts as did the original conviction for marijuana possession. Accordingly, the speedy-trial time limit for that count began to run at the time [that defendant] was held for the original arrest and the trial court properly dismissed that count as violating R.C. 2945.71. However, the first count of the indictment, trafficking in drugs, arose from a drug buy that took place [on a date] before [matters charged regarding] the original arrest. Because the facts of the first count of the indictment were not the same facts as those of the original arrest, the speedy-trial clock did not start running until the [defendant] was indicted on that count." *Id*. at ¶ 19. One count of the superseding indictment thus was thrown out due to speedy trial requirements, while another count of that indictment should not have been invalidated on that ground. *Id*.

{¶ 36} The same sort of approach is indicated by *State v. Reeves*, 2d Dist. No. 2015-CA-12, 2016-Ohio-5540, ¶ 20. There, where the defendant had waived time up to the date of a new superseding indictment arising from the same set of

18

circumstances, those initial counts were treated separately from the subsequent additional but related counts (which related back to the same arrest date but as to which time had not been waived); the state conceded that those additional counts should be dismissed "because speedy trial time had elapsed" by the time of trial, but defendant was appropriately convicted on those counts as to which time had been waived in the first case up to the time of the second indictment. *See also*, *e.g., State v. Jackson*, 1998 Ohio App. Lexis 4469 (2d Dist.1998) (defendant tried more than a year after his arrest and within two months of superseding indictment; general waiver as to speedy trial time on initial counts does not apply to additional charges that relate back to original arrest date).

{¶ 37} Here, the state acknowledges that some 41 days (123 when multiplied by 3) are chargeable against the state "as to the original charges" before the superseding indictment issued. See Appellee's Brief at 12. And the state does not argue that the final continuance entry in the case under the original indictment—an entry filed November 6, 2017 and purporting to run to the then-scheduled trial date of February 5, 2018—somehow extends beyond the expiration of that case.

{¶ 38} But the state does suggest, without citation to precedent, that the continuance entry and the represented defendant's pro se June 23, 2017 motion to dismiss on other grounds (a motion on which the trial court never ruled and that would appear to have been without effect under the judge's view as later expressed, with regard to a different motion, that "hybrid representation" is not permitted, see July 11, 2018 Tr. at 6-7) "tolled time until [that first] case was nolled on January 23, 2018." Appellee's Brief at 12.

{¶ 39} That contention goes to the nub of the speedy trial issue regarding counts 41 and 43. The state concedes that for each case, delay chargeable against the state is to be multiplied by three, as Mr. Graham was incarcerated for the entire period. *See id*. at 13, 441 N.E.2d 571 (multiplying state's calculation of days "as to the original charges" by three), 14 (same multiplier for new charges). Therefore, if the 41 actual days that the state acknowledges regarding the initial charges is added to 50 actual days or more that ran after the superseding indictment, Mr. Graham's speedy trial time expired on those two counts. R.C. 2945.71.

{¶ 40} The question of whether the November 6, 2017 continuance as jointly signed by counsel in the first case applied not only to that case going forward but also, and simultaneously, to certain counts in the second indictment as issued well after the continuance entry is potentially conclusive: The state acknowledges that 51 days ran between the time of the superseding indictment and Mr. Graham's January 4, 2018 filing for discovery in that case, and that another 25 days ran between the day on which the state responded to that discovery request and the date of the next agreed continuance. Appellee's Brief at 13. If those 76 actual days chargeable against the state are aggregated with the acknowledged 41 earlier days relating to the first case, the state would be 81 days out of time. (41 x 3 plus 76 x 3 then minus 270 equals 81.)

{¶ 41} Mr. Graham urges that the chargeable time in excess of 270 days exceeds even that calculation because after March 22, 2017, Mr. Graham "refused to sign any of the remaining continuances in 17CR528," and "[t]hese continuances were not reasonable" in light of Mr. Graham's known objections, especially as coupled with the ostensible purposes for the continuances, which "made Mr. Graham's statutory protections to a speedy trial virtually meaningless." Appellee's Brief at 7-9.

{¶ 42} Mr. Graham's arguments regarding the effect in the first case of continuance entries agreed to by his own lawyer run contrary to the weight of substantial precedent from this court. We have said that where "continuances were not requested solely by the State or *sua sponte* by the court, there is no requirement under R.C. 2945.72(H) that these continuances be reasonable." *Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 24, citing *State v. Kist*, 173 Ohio App.3d 158, 2007-Ohio-4773, 877 N.E.2d 747 (11th Dist.2007), ¶ 35; *see also, e.g., State v. Dennison*, 10th Dist. No. 12AP-718, 2013-Ohio-5535, ¶ 19 ("it is well established that continuances granted on joint motions of both the state and defense toll the statute, and the only continuances that must be reasonable in order to toll the statutory time limits are those requested by the state or *sua sponte* by the trial court") (citations omitted), ¶ 18 ("that appellant repeatedly submitted his own pro se filings objecting to his appointed counsel's multiple continuance requests does not warrant a contrary finding") (citations omitted); *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 16, 17 ("R.C. 2945.72(H) does not require that a continuance granted upon the accused's own motion be reasonable for the time period to be tolled. Additionally, any continuances granted by a joint motion or agreement of the parties also toll the statutory time period. * * * The only continuances that must be reasonable to toll the statutory time limits are those requested by the state or *sua sponte* ordered by the trial court"; on this score, defendant is "bound" by counsel "even over the defendant's objections") (citations omitted); *State v. McQueen*, 10th Dist. No. 09AP-195, 2009-Ohio-6272 (same effect); *State v. Brime*, 10th Dist. No. 09AP-491, 2009-Ohio-6572 (same); *State v. Lytle*, 10th Dist. No. 13AP-866, 2015-Ohio-1133 (same). *Compare State v. Taylor*, 98 Ohio St.3d 27, 36, 781 N.E.2d 72 (2002) (counsel waiver valid over defendant's objections where undertaken to allow for consideration of defense motions).

{¶ 43} That well engrained case law presents a significant barrier, for example, to an argument that we should look behind the counsel-ratified continuance of July 6, 2017, which granted—over Mr. Graham's earlier expressions that he did not want to waive any time—a 55-day continuance of the trial set for that date, on the sole stated basis that Mr. Graham had not been transported from jail by the appointed hour. *But compare State v. Kroesen*, 10th Dist. No. 00AP-48, 2000 WL 1715764, *7, 2000 Ohio App. Lexis 5305, *20 (reasonable delay agreed to by counsel overrides defendant's objections, although "[d]efense counsel's power to waive his client's right to a speedy trial is limited to a reasonable period of time or to that length of time which does not constitute ineffective assistance of counsel"); *State*

*v. McBreen*, 54 Ohio St.2d 315, 319-20, 376 N.E.2d 593 (1978) (counsel waiver of speedy trial time is binding when "for the purpose of trial preparation," but " 'counsel's control * * * is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence.' ") (citation omitted).

{¶ 44} In any event, we need not rehearse further any question of whether Mr. Graham was bound by his lawyer's agreements to the continuances because here we find that the effect of the last continuance in the first case did not also bind him with regard to the second case that later eventuated. Informed by the principle that the speedy trial statute "is * * * mandatory, and must be strictly construed against the state," *Kist*, 173 Ohio App.3d at 161, 877 N.E.2d 747 (citation omitted); *Jackson*, 2d Dist. No. 17056, 1998 Ohio App. Lexis 4469 at *6, we are not persuaded that the continuance form signed in the first case as one of the last acts of Mr. Graham's initial, appointed counsel and over Mr. Graham's objections should be given simultaneous, continuing effect for a new indictment incorporating those allegations as part of a much more extensive case that did not even exist as a formal matter until well after the continuance form for the first case had been executed. *Compare, State v. Homan*, 89 Ohio St.3d 421, 428, 732 N.E.2d 952 (2000) ("R.C. 2945.72(E) does not apply to charges filed by the state after the defendant's motion is filed"), superseded by statute on other grounds as stated in *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 22, 863 N.E.2d 155.

{¶ 45} The state does not contest that 41 actual days are chargeable to the first case. Appellant's Brief at 12. The only question here is whether the last continuance entry in that initial case is found to continue on into the future even for purposes of a broader case as later filed linking those charges with others.

{¶ 46} Under the circumstances of the cases here, the answer is no. The state filed a new indictment against Mr. Graham, and by its own calculation, the state says that some 76 actual days (51 days to start, followed later by another 25) ran as to the later counts in the second case. Appellant's Brief at 13. The state cites no authority for an argument that such time accrued in that second case should not apply to the older counts there, and we do not find such an argument persuasive. After all, *Adams* and its progeny make clear that the clock on the older counts (already at the 41 actual days) does not reset with the filing of the newer counts, and no tolling event occurred in the new case until more than 50 additional days had elapsed.

{¶ 47} The new indictment began by reciting that all "Counts 1 through 44 are part of [one] course of criminal conduct between September 29, 2016, and January 19, 2017, for which the course of conduct took place in multiple counties including Franklin County and Delaware County." It went on: "the offenses were [all] committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective * * *." In such a context, as the Supreme Court of Ohio found in a different setting in *Adams*, "other defense considerations may arise

21

which will affect [a defendant's] decision whether to waive the right to a speedy trial as to any subsequent charges stemming from the same set of circumstances. Thus, a knowing and intelligent waiver cannot be made until all the facts are known by the accused, which includes knowing the exact nature of the crime he is charged with." 43 Ohio St.3d at 70, 538 N.E.2d 1025. The defense calculus, weighing significantly expanded burdens and assessing potential opportunities, becomes more intricate at that point given the web of allegedly interconnected crimes.

{¶ 48} Under these circumstances, we echo some of the observations in *State v. Wood*, 81 Ohio App.3d 489, 491, 611 N.E.2d 418 (2d Dist.1992), in rejecting the argument that a continuance motion in the initial case somehow could "operate[ ] as a request to continue a case which at that time was not even in existence." The state could have tried Mr. Graham in the first case within the time allowed by the continuance forms there. But it elected not to do so, instead weaving those charges into a much broader tapestry. *Compare, e.g., State v. Logan*, 71 Ohio App.3d 292, 298, 593 N.E.2d 395 (10th Dist.1991) (explaining in connection with former statute that the "trial court found that the waiver executed on March 26, 1990 [under the first indictment], was effective through June 7, 1990, the date on which defendant was reindicted on identical charges in Hocking County [then transferred here], a ruling supported by the syllabus of *State v. Adams* (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025"); *State v. Juarez-Hernandez*, 10th Dist. No. 12AP-95, 2012-Ohio-4835, ¶ 14 (tolling in first case counts as to those charges at least up to time of second indictment, but court assumes for purposes of argument that clock on charges in superseding indictment then began to run on date of second indictment up to date of defendant's motion 22 days later to dismiss that second case).

{¶ 49} These are not circumstances, then, in which a defendant's ability to defend himself seems unimpaired by a reiteration of existing charges simply under a different case number. *Compare State v. Clark*, 107 Ohio App.3d 141, 153, 667 N.E.2d 1262 (2d Dist.1995) (where defendant in first case had given general time waiver as to the only charges that ultimately remained after re-indictment, "the two cases differ only in case number" and defendant's "ability to defend himself was not impaired," so time did not run). And, we underscore, in keeping with *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, we accord the state full credit for all time tolled in the initial case as to those charges, up to and including the day of issuance of the superseding indictment.

{¶ 50} We therefore conclude that Mr. Graham's convictions here violated his statutory speedy trial rights with regard to counts 41 and 43 only. (Counts 42 and 44 as dismissed by virtue of the plea agreement would suffer the same infirmity.)

2) Constitutional speedy trial rights

{¶ 51} Pursuant to the Sixth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, *see Klopfer v. North*

*Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), an accused criminal defendant "shall enjoy the right to a speedy and public trial * * *."

{¶ 52} Our Supreme Court has said that "[t]he Ohio Constitution provides similar protection" through language that "[i]n any trial," an accused shall have process to gain "speedy public trial * * *." *State v. Selvage*, 80 Ohio St.3d 465, 466, 687 N.E.2d 433 (1997), citing Ohio Constitution, Article I, Section 10. *See also State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969) (assuming that disposing of a federal speedy trial claim also resolves the issue under Ohio's Constitution). This court has said that the federal and Ohio "speedy trial rights are essentially equivalent." *Glass,* 2011-Ohio-6287, at ¶ 11 (citing *Butler,* and observing that Ohio's speedy trial statutes, as discussed above, "were implemented to enforce those constitutional guarantees").

{¶ 53} In any event, Mr. Graham posits here that the "Ohio statutory speedy trial provisions and the constitutional right to speedy trial under the United States and Ohio Constitutions are coextensive." Appellant's Brief at 10. He does not differentiate between the constitutional speedy trial rights that he claims; at least for purposes of this case, then, we approach any such (unargued) differentiation with caution (notwithstanding one potential aspect in which the Ohio right appears broader than its federal counterpart, a distinction that we conclude ultimately is not determinative here as discussed below).

{¶ 54} We note further that although the state tells us that "Defendant did not raise a constitutional speedy trial claim in his motion or in the proceedings below," Appellee's Brief at 14, that characterization is not correct: Mr. Graham's May 30, 2018 Motion to Dismiss, as adopted by his counsel during the plea and sentencing colloquy of July 23, 2018, explicitly argues for example that the state "undercut my speedy trial rights in violation of my Sixth and Fourteenth Amendment rights." (May, 30, 2018 Mot. to Dismiss; July 23, 2018 Tr. at 4.)

{¶ 55} As the Supreme Court of Ohio did in *Selvage*, 80 Ohio St.3d at 467, 687 N.E.2d 433, this court has turned to the United States Supreme Court's four-factor test of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in assessing whether the state has violated a defendant's constitutional speedy trial rights. *See, e.g., Watson*, 2013-Ohio-5603 at ¶ 26; *Glass*, 2011-Ohio-6287 at ¶ 19. Those factors involve: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182.

{¶ 56} Because the "length of the delay is to some extent a triggering mechanism," *id.*, the state argues that "[a]s to the new charges" contained in the second indictment (that is, as to the charges still at issue), that factor is dispositive. Appellant's Brief at 15-16.

{¶ 57} "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. "A delay becomes presumptively prejudicial as it approaches one year in length." *State v. Adams*, 144 Ohio St.3d 429, 442, 2015-Ohio-3954, 45 N.E.3d 127, citing *Doggett v. United States*, 505 U.S. 647, 652, fn. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). *See also, e.g., Watson*, 2013-Ohio-5603 at ¶ 27 (citations omitted for same proposition; trial 18 months after defendant's arrest is "presumptively prejudicial").

{¶ 58} Here, only nine months elapsed from indictment on the new charges to Mr. Graham's plea. In the context of these counts, we conclude both that that is the appropriate interval to measure and that the nine months was not "presumptively prejudicial."

{¶ 59} Largely for reasons related to those for which the statutory new trial clock started afresh with the new counts, we do not believe that the measurement here should relate back to dates before the second indictment and Mr. Graham's subsequent arrest in that matter. We also observe that Mr. Graham does not invoke federal or state due process rights regarding pre-indictment delay arguments, nor does he point to the sort of actual, specific, non-speculative substantial prejudice that would be required to pursue such a course. *Compare, Adams,* 144 Ohio St.3d at 444, 45 N.E.3d 127; *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984); *Williams,* 2014-Ohio-2737 at ¶ 41 (required showing not made).

{¶ 60} The United States Supreme Court held in *United States v. Marion*, 404 U.S. 307, 315, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that the Sixth Amendment speedy trial right does not extend to time before indictment, charge, or arrest. *See also Luck,* 15 Ohio St.3d at 153, 472 N.E.2d 1097 (*Marion* holds that federal right "has no applicability to pre-indictment delays"). By contrast, in *State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1984), paragraph three of the syllabus, the Supreme Court of Ohio had opined that state and federal speedy trial guarantees "are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment." But in light of *Marion*, the Supreme Court of Ohio in *Luck* instructed that while *Meeker* retains some vitality with respect to Ohio's speedy trial provision, it "remains viable only insofar as its application is limited to cases that are factually similar to it." 15 Ohio St.3d at 153, 472 N.E.2d 1097 (also implying that *Marion's* ruling on federal constitutional provision to some extent "nullified" *Meeker's* ruling even with regard to Ohio's own constitutional provision).

{¶ 61} The Supreme Court of Ohio then went on to emphasize the salient fact that in *Meeker*, all the acts for which the defendant later was charged had occurred "at the same time and place" as the act for which he initially had been indicted. *Id.*; *see also Meeker*, 26 Ohio St.2d at 18, 268 N.E.2d 589 (discussing acts committed "at the same time and place" but intentionally charged sequentially by the state). "The defendant's right to a speedy trial under the Ohio Constitution was violated in

24

*Meeker* because the defendant's initial indictment encompassed the same events that were the basis of his second indictment, and the delay in commencing prosecution for the offenses described in the second indictment occurred after the defendant had already been indicted for an offense arising" from those very events. *Luck,* 15 Ohio St.3d at 153, 472 N.E.2d 1097 (emphasis added and omitted).

{¶ 62} Here, as we have seen, the new, non-duplicated charges on which Mr. Graham was convicted under the second indictment arose from acts not committed "at the same time and place" as the acts described in the three counts from the first indictment. They encompassed at least some 17 additional break-ins, on dates other than the January 19, 2016 Tai's Asian Bistro and The Uniform Store events, and involving different locations and victims. And, again, the parties agreed in the September 11, 2017 entry that the state had "recently received information on several additional incidents" that needed to be factored into new charging decisions.

{¶ 63} These circumstances are not "factually similar" to *Meeker,* to use *Luck's* restrictive formulation. That is what we found in *Williams,* too, as to certain counts of the indictment that "did not occur at the same time and place" as other counts, and as to which *Meeker* therefore was "inapplicable" as "not factually similar" to the case at hand. 2014-Ohio-2737 at ¶ 41.

{¶ 64} So on these facts, and guided by governing precedent on the particular question as to whether preindictment delay should be assessed here, we do not further wrestle with the assertion of Mr. Graham's brief that federal and state speedy trial rights are "coextensive." But see, Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law (Oxford University Press 2018) at 1 (celebrating that "virtually all of the foundational liberties that protect Americans originated in the state constitutions and to this day remain independently protected by them"), 7 (using basketball free-throw analogy to bemoan "American lawyers regularly taking just one shot rather than two to invalidate state [action] on behalf of their clients"), 174 (contesting proposition that "as an interpretive matter, * * * constitutional guarantees of independent sovereigns, even guarantees with the same or similar words, must be construed in the same way"); 178 ("State court decisions that imitate federal court decisions not only seem to be prioritizing the wrong decisions in determining the meaning of their own constitutions, but they also seem to be inverting the right sequence for considering state and federal arguments").

{¶ 65} Given our statutory ruling granting Mr. Graham relief as to the counts arising from the events recited in the first indictment, we need only look here to the new counts arising from the other events set forth in the second indictment. We agree with the state that "[a]s to [those] new charges, Defendant cannot meet the threshold burden as the delay was only 9 months * * *." Appellee's Brief at 15-16.

{¶ 66} The roughly nine-month period from the time of the second indictment to the time Mr. Graham entered his plea is not "presumptively prejudicial." *See, e.g.*,

*State v. Taylor*, 98 Ohio St.3d 27, 33, 2002-Ohio-7017, 781 N.E.2d 72 ("The fact that appellant was brought to trial within a year of the murders can hardly allow the delay to be characterized as 'presumptively prejudicial,' a label that ordinarily triggers a constitutional speedy trial analysis and inquiry into the remaining *Barker* factors"). In *State v. Brime*, 10th Dist. No. 09AP-491, 2009-Ohio-6572, ¶ 21, in the course of finding no presumptive prejudice where "the delay between the filing of the indictment and * * * trial was a little more than six months," we cited approvingly to *State v. Carter*, 9th Dist. No. 97CA006703, 1998 WL 150380, 1998 Ohio App. Lexis 1370 (April 1, 1998), as reflecting that a "nine-month delay 'does not constitute a "presumptively prejudicial" delay for speedy trial purposes.' "

{¶ 67} We therefore need not weigh the four *Barker* factors. *See, e.g., Glass*, 2011-Ohio-6287 at ¶ 20 ("the *Barker* analysis is * * * triggered [only] once a 'presumptively prejudicial' delay is shown") (citations omitted); *Brime,* 2009-Ohio-6572 at ¶ 22 (thus, "the record is insufficient to trigger examination of the remaining *Barker* factors").

{¶ 68} Were we to do so, we still would not find constitutional speedy trial violations with regard to the new charges now at issue. The nine-month delay here was nothing like the more than five-year delay in *Barker's* "close" case (that did involve many complexities not presented here). *Compare* 407 U.S. at 533, 92 S.Ct. 2182. Included within that time was Mr. Graham's discovery demand of January 4, 2018; the February 6, 2018 entry signed by Mr. Graham himself to allow for appointment of new counsel and preparation time; and other continuances that Mr. Graham and his lawyer also signed to provide for further discovery and "defense investigation." Again, fewer than ninety days of this period are chargeable against the state, and the defendant himself endorsed the several continuances during this second stage. His pro se May 30, 2018 motion to dismiss as invoking speedy trial grounds was filed less than two months before the plea and was not adopted by counsel until the day of plea. Finally, the record reflects no particular delay-related impairment of Mr. Graham's ability to defend his case, and he "does not point to any particular witnesses" whose testimony or memories were lost to him during this period, *see Glass*, 2011-Ohio-6287 at ¶ 25; we do not find oppression as to delay "attributable to defendant's own motions and requests for continuances," *see Watson*, 2013-Ohio-5603 at ¶ 32; and "defendant's bare allegation of anxiety and concern presents no particular reason for this [aspect of the prejudice] factor to weigh heavily in our consideration," *see id.*, citing *Glass.*

{¶ 69} Therefore, Mr. Graham does not prevail on his constitutional arguments regarding the additional counts of the new indictment on which he was convicted. Because we have found that his convictions on the original charges as duplicated in counts 41 and 43 are invalid under Ohio's speedy trial statute, we do not revisit those counts for constitutional analysis.

Conclusion

{¶ 70} We affirm Mr. Graham's convictions as to counts One, Three, Five, Six, Eight, Ten, Twelve, Fifteen, Eighteen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Eight, Twenty-Nine, Thirty-One, Thirty-Three, Thirty-Six, and Thirty-Nine; they withstand the speedy trial challenges.

{¶ 71} We reverse Mr. Graham's convictions as to counts Forty-One and Forty-Three because prosecution on counts 41 through 44 was barred by operation of Ohio's speedy trial statutes.

*State v. Graham*, 2019 WL 2237030, at *3-12.

To the extent that Petitioner asserts the alleged violation of state law, or Ohio's speedy trial statutes, this claim does not provide him relief. *See Jackaway v. Woods*, No. 15-cv-11491, 2016 WL 304739, at *3 (E.D. Mich. Jan. 26, 2016) ("[a] violation of a state speedy trial law by state officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition") (citing *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994), *cert. denied.*, 514 U.S. 1024 (1995); *Wells v. Petsock*, 941 F.2d 253, 256 (3rd Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992)); *Younker v. Warden*, No. 1:10-cv-875, 2011 WL 2982589, at *10 (S.D. Ohio June 24, 2011) (claims based solely on a violation of Ohio's speedy trial statute do not present a cognizable federal constitutional claim subject to review in habeas corpus proceedings) (citing *Norris v. Schotten*, 146 F.3d 314, 328–29 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998)) (other citations omitted)).  This Court reviews a state prisoner's habeas corpus petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court does not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Moreover, a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence

27

and procedure'" in considering a habeas petition. *Machin v. Wainwright*, 758 F.2d 1431, 1433

(11th Cir. 1985) (quoting *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (11th Cir. 1984)).

"Generally, a federal habeas court sitting in review of a state-court judgment should not second

guess a state court's decision concerning matters of state law." *Greer v. Mitchell*, 264 F.3d 663,

675 (6th Cir. 2001) (citing *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("[p]rinciples of

comity and finality equally command that a habeas court cannot revisit a state court's

interpretation of state law, and in particular, instruct that a habeas court accept the interpretation

of state law by the highest state court on a petitioner's direct appeal"), *cert. denied*, 533 U.S. 941

(2001)), *cert. denied*, 535 U.S. 940 (2002). "[T]his Court must defer to and is bound by the state

courts' determination that Ohio's speedy trial statute was not violated[.]" *Younker,* 2011 WL

2982589, at *10 (citing *Caddy v. Ohio,* No. 3:07cv339, 2010 WL 2640073, at *3 (S.D. Ohio

May 18, 2010) (internal citations omitted), *adopted*, 2010 WL 2629797 (S.D. Ohio June 29,

2010) (Black, J.)).

    The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy trial and public trial." U.S. Const. amend. VI. "The Supreme Court

has stated that the Sixth Amendment's speedy trial guarantee is 'an important safeguard to

prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern

accompanying public accusation and to limit the possibilities that long delay will impair the

ability of an accused to defend himself.'" *Bennett v. Warden, Marion Correctional Inst.,* 782

F.Supp.2d 466, 479 (S.D. Ohio 2011) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971)).

The protection of the Sixth Amendment is activated "only when a criminal prosecution has

begun and extends only to those persons who have been 'accused' in the course of that

prosecution." *Marion,* 404 U.S. at 313. The Supreme Court has recognized that the

constitutional right to a speedy trial permits some delays depending on the circumstances of each case, and cannot "be quantified into a specified number of days or months." *Bennett,* 782 F.Supp.2d at 480 (quoting *Barker v. Wingo*, 407 U.S. 514, 521-23 (1972)). In *Barker,* the Supreme Court held that a review court should conduct a "balancing test" to determine whether a criminal defendant has been denied the right to a speedy trial, considering the following four factors: the "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530 (footnote omitted). The length of the delay is "a triggering mechanism." *Id*. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. "The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (citations omitted). "A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992)).

Petitioner has not demonstrated that the Ohio Court of Appeals' decision contravened or unreasonably applied clearly established federal law as determined by the United States Supreme Court or that it was based on an unreasonable determination of the facts in light of the evidence presented. The time period from the date of Petitioner's second Indictment on November 14, 2017, on new charges unrelated to his prior Indictment, to the date of his guilty plea on July 23, 2018, of eight months and nine days, does not amount to presumptively prejudicial delay under *Barker. See United States v. Gardner*, 488 F.3d 700, 729 (6th Cir. 2007). "Delays several months short of one year are not 'uncommonly long[.]'" *Id*. Accordingly, Petitioner's speedy trial claim fails without further examination. *See id*.

Claims one and two are without merit.

29

## IV.    DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be

D**ISMISSED**.  Petitioner's Motion to Compel the Respondent to submit the exhibits attached to

the Petitioner's motion (ECF No. 5) is **DENIED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A judge of this Court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may

recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the district judge review the Report

and Recommendation de novo, and also operates as a waiver of the right to appeal the decision

of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S.

140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further

advised that, if they intend to file an appeal of any adverse decision, they may submit arguments

in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

_s/  Elizabeth A. Preston Deavers_
Elizabeth A. Preston Deavers
United States Magistrate Judge